IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROOFERS LOCAL 30 COMBINED | : | CIVIL ACTION |
| WELFARE FUND, et al. | : | |
| | : | |
| v. | : | |
| | : | No. 06-3787 |
| WILLIAM J. BOURQUE | : | |

## DECISION

Ludwig, J.                                                        September 25, 2009

Plaintiffs[1] sue defendant[2] for payments alleged to be due under a collective bargaining agreement.  Upon hearing, judgment will be entered in favor of plaintiffs and against defendant in the amount of $11,137.67, plus interest, liquidated damages, attorneys' fees and costs.[3]

I. Findings of Fact

1. On May 24, 2005, defendant William J. Bourque signed a Memorandum of

---

[1] Plaintiffs are Roofers Local 30 Combined Welfare Fund, Roofers Local No. 30 Combined Pension Fund, Roofers Local No. 30 Combined Vacation Fund, Roofers Local 30 Combined Annuity Fund, and Composition Roofers Union Local No. 30 Apprenticeship Fund (all trust funds established under 29 U.S.C. § 185(c)(5) and "multiemployer plans" and "employee benefit plans" within the meaning of 29 U.S.C. § 1002(37)(1), (2) and (3)) ("the Funds"); Roofers Local 30 Political Action and Education Fund (a political action committee), Roofing Contractors Association Industry Fund (a fund established to foster the interests of the Philadelphia area roofing industry), and Local Union No. 30 of the United Union of Roofers, Waterproofers and Allied Workers, AFL-CIO ("the Union").

[2] Defendant is William J. Bourque a/k/a William J. Bourque, Jr. d/b/a McGiver Spray Systems also d/b/a MacGyver Services, Inc.  Defendant operates a commercial coating business. Hearing transcript, 13.

[3] Under the relevant ERISA statute, upon a finding in favor of an ERISA plaintiff, awards of interest, liquidated damages, attorneys' fees and costs are mandatory.  29 U.S.C. § 1132(g)(2).

Agreement with the Union related to his company's work on a roofing project at the Bristol-Myers-Squibb plant in New Jersey.  Transcript of hearing, 14-15;  Memorandum of Agreement, Plaintiffs' Exhibit 1.

2. The "Collective Bargaining Agreement by and Between Roofers Local 30 and Roofing Contractors' Association Covering Commercial Roofing and Commercial Reroofing" for the period May 1, 2001 through April 30, 2009 was in effect on May 24, 2005.  Collective Bargaining Agreement, Plaintiffs' Exhibit 2.

3. The MOA required defendant to "abide by all of the terms and conditions of the collective bargaining agreement in effect as of 5-24-05 through completion between United Union of Roofers, Waterproofers and Allied Workers Local Union #30 and the Roofing Contractors Association."  Plaintiffs' Exhibit 1.

4. The Collective Bargaining Agreement requires the payment of contributions and wage deductions to the Funds for time worked by employees covered by the terms and conditions of the agreement.  Plaintiffs' Exhibit 2, at 51-64.

5. From June 2005 through September 2005, defendant worked on the Bristol-Myers-Squibb project.  Transcript, 17; Pay stubs, Plaintiffs' Exhibits 4-7.  Defendant was required to hire Roofers Union employees to work on the project.  Transcript, 15.

6. The Union employees were John Swayze (shop steward), Kenney Alley (foreman), John Wim, and Edward Tittermary.  Transcript, 19; pay stubs, Plaintiffs' Exhibits 4-7; Remittance reports, Plaintiffs' Exhibit 8.

2

7. Defendant paid the employees based on "summer hours," as described to him by Swayze and Alley.  Under "summer hours," instead of working from 7:00 a.m. until 3:30 p.m., the employees were permitted to begin work at 6:30 a.m. and leave at 1:00 p.m., with only a 15-minute break during the day.  They were to be paid for a full eight-hour day, even though they worked only six hours.  Transcript, 20.

8. Defendant requested written proof of "summer hours," but no proof was given to him, and Bourque learned only after the project was completed that "summer hours" did not exist.  Transcript, 20121.

9. Defendant paid the Union employees for 40-hour work weeks based on a wage rate provided by Swayze.  Transcript, 17, 29-30; Plaintiff's Exhibits 4-7.

10. During the course of the project, defendant made contributions to plaintiffs by giving checks made payable to "Local 30 Roofers Union" to Swayze at Swayze's request. Defendant gave Swayze two $800 checks and one for $3,640.  The $800 checks were cashed; the $3,640 check was not.  Transcript, 22.

11. Defendant made no other contribution payments.

12. Defendant was not provided with a copy of the collective bargaining agreement or the wage sheet in effect during the course of the project until October 19, 2006, more than a year after the completion of defendant's work.  Transcript, 16, 17.

13. Defendant was not provided with reporting forms or remittance forms for calculating contributions to be paid to the Funds during the course of the project.  Transcript,

3

21-22.

14. Defendant completed and submitted remittance forms in January, 2007.  Plaintiffs' Exhibit 8.

15. The remittance forms reflect the hours actually worked by the Union employees. Defendant used the actual hours worked to calculate the contributions owed to plaintiffs. Transcript, 29-31, 33.

16. Defendant paid no further contributions.

## II. Discussion

Section 515 of ERISA: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collective bargaining agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.  By signing the MOA, defendant bound himslef to the terms and conditions of the collective bargaining agreement.  The collective bargaining agreement obligated defendant to pay wages to Union employees and contributions to the Funds at the rates in effect during the period they worked on the Bristol-Myers-Squibb project.  This is so although defendant was not provided with the wage sheet until long after the completion of the project.

The pay stubs submitted for the Union employees reflect a total of 762 hours worked. However, defendant Bourque's testimony, which is credited, is that Union employees were paid as if they had worked eight-hour days, based on their insistence that "summer hours"

were in effect.  Actually, they worked only six-hour days, for a total of 593 hours, as reflected in the remittance sheets prepared by defendant.  The hourly contribution rate applicable to journeymen roofers at the time the project was ongoing was $21.48 per hour.[4] Multiplying the 593 hours worked by the Union employees times the required contribution rate of $21.48 per hour results in a contribution obligation of $12,737.67.  Defendant gave a cash bond of $1,600 (Transcript, at 22), which reduces the delinquent contribution amount owed to $11,137.67.

Defendant says he is entitled to a set-off against the delinquent amount because Union employees were overpaid as a result of the "summer hours" misinformation from Swayze and Alley.  However, the Union and the Funds are separate entities, and statements made by Union representatives are not attributable to the Funds.  Chambless v. Masters, Mates & Pilot's Pension Plan, 772 F.2d 1032, 1041 (2d Cir. 1985), cert. denied, 475 U.S. 1012 (1986); Dudo v. Schaffer, 551 F. Supp. 1330, 1342 (E.D. Pa. 1982), aff'd, 720 F.2d 661 (3d Cir. 1983).  Even if the statements were attributable to the Funds and a set-off appropriate,

---

[4] That amount breaks down as follows:

| | |
|---|---|
| Welfare Fund | $ 8.23 |
| Annuity Fund | $ 5.24 |
| Pension Fund | $ 4.00 |
| RCAIF Fund | $  .40 |
| Apprenticeship Fund | $  .08 |
| Vacation/Holiday Fund & Credit Union | $ 1.80 |
| Union Fund | $ 1.61 |
| Political Action Fund | $  .07 |
| Home Association Fund | $  .05 |

because this is an action to recover delinquencies, the defense would be negated. <u>Central States, S.E. and S.W. Areas Pension Fund v. Gerber Truck Service, Inc.</u>, 870 F.2d 1148, 1153 (7th Cir. 1989) (en banc)(employer must pay contributions to pension plans notwithstanding defenses to formation of contract); <u>Abbate v. Browning-Ferris Industries, Inc.</u>, 767 F.2d 52, 55-56 (3d Cir. 1985) (oral modification by union of terms of written agreement to pay into employee benefit funds ineffective in modifying pension obligations). Accordingly, defendant is not entitled to a set-off, and an award of $11,137.67 must be entered against him.

Upon finding in an ERISA plaintiff's favor, a court must award the following under the ERISA statute:

(A) the unpaid contributions;

(B) interest on the unpaid contributions;

(C) an amount equal to the greater of -

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A);

(D) reasonable attorneys' fees and costs of the action; and

(E) such other legal or equitable relief as the court deems appropriate.

Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2).  Interest under ERISA is calculated

from the date the contributions became due until the date of actual payment and is a mandatory award under ERISA. 29 U.S.C. § 1132(a)(2); Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co., 484 U.S. 539, 547 (1988).  An award of liquidated damages is also mandatory under ERISA. [5]

Through September 25, 2009, defendant owes interest "equal to one percent (1%) of the gross amount of the contributions due to the Fund for each month (or part of a month) the contributions remain unpaid."  Collective Bargaining Agreement, Article XXIII, Section 2(b).  Defendant also owes liquidated damages of up to 15% of the amount of the delinquent contributions.  Id.  Additionally, defendant is required to pay reasonable attorneys' fees and costs.  29 U.S.C. § 1132(g)(2)(D).

III. Conclusions of Law

1. This court has subject matter jurisdiction over this action and over the parties.  29 U.S.C. §§ 185(a), 1132 and 1145.  Venue lies in the Eastern District of Pennsylvania under 29 U.S.C. §§ 185(a) or 1132(e)(2).

---

[5] Moreover, the collective bargaining agreement requires an award of interest on late payments, and an award of counsel fees and liquidated damages where the funds are required to resort to litigation to recover delinquent payments.  "An Employer who has not paid its required contributions for a month by the twenty-fifth (25th) day of the month following the month in which the contribution obligation was incurred shall be required to pay, in addition to the unpaid contributions, interest equal to one percent (1%) of the gross amount of the contributions due to the Fund for each month (or part of a month) the contributions remain unpaid.  The Employer who is delinquent in such fashion shall pay counsel fees and liquidated damages up to fifteen percent (15%) of the amount of delinquent contributions t the various benefit funds in the event such finds find it necessary to initiate legal action to recover the delinquency."Collective Bargaining Agreement, Article XXXIII, Section 2(b).

2. The Union employees should be classified as journeymen and paid as such according to the wage rate sheet, Plaintiffs' Exhibit 3.

3. The Union employees should not have been paid for eight-hour days, because they worked only six-hour days.

4. Though the Union employees were overpaid, defendant may not set off the overpayment against contributions due plaintiffs.

5. Contributions must be calculated based on six-hour workdays.

6. Plaintiffs are entitled to an award of interest and liquidated damages, and reasonable attorneys' fees and costs.

7. Judgment in favor of plaintiffs will be entered for the following:

a. Contributions of $11,137.67;

b. Interest to date, to be calculated according to the collective bargaining agreement;

c. Liquidated damages to be calculated according to the collective bargaining agreement.

8. Plaintiffs will submit an updated petition for attorneys' fees, with interest and liquidated damages calculations by October 23, 2009.  Defendant will have until November 20, 2009, in which to submit objections.

BY THE COURT:


 /s/ Edmund V. Ludwig
Edmund V. Ludwig, J.